IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBERT HUFFMAN, OBO
KAREN BETH HUFFMAN,

           Plaintiff,

v.                                                               CIVIL ACTION NO.   2:16-cv-02594

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Complaint seeking review of the final decision of the Commissioner of Social Security ("Commissioner").[1]  (ECF No. 2.)   Plaintiff Robert Huffman prosecutes this action on behalf of his wife, Karen Beth Huffman (hereinafter "Claimant").   Plaintiff was substituted as a party following Claimant's death on March 24, 2016.

By standing order filed in this case on March 17, 2016, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of proposed findings and recommendations for disposition (the "PF&R").  (ECF No. 4.)   On December 14, 2016, the magistrate judge entered his PF&R, recommending that this Court deny Plaintiff's request for judgment on the pleadings, grant the Commissioner's request for judgment on the pleadings, affirm

---

[1] While Carolyn W. Colvin was the Acting Commissioner of Social Security when Claimant commenced this action, Nancy Berryhill became the Acting Commissioner on January 23, 2017. Acting Commissioner Berryhill is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25.

the Commissioner's decision, and dismiss this case. Plaintiff filed timely objections to the PF&R on January 3, 2017 (the "Objections").

For the reasons that follow, the Court **OVERRULES** the Objections, (ECF No. 26), **ADOPTS** the PF&R, (ECF No. 25), **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 20), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 23), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action.

## I.   PROCEDURAL BACKGROUND

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Claimant filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") on June 25, 2012, alleging disability as of November 1, 2008,[2] due to diabetes, neuropathy, high blood pressure and cholesterol, heart problems, and arterial disease. (Tr. 56.) Claimant would later complain of mental impairments, including problems with memory and concentration. (*See id.* at 240.) For purposes of her DIB application, Claimant's date last insured ("DLI") was June 30, 2012. (*Id.* at 11.) The applications were denied initially on October 26, 2012. Upon reconsideration, Claimant's SSI claim was allowed with a later onset date of December 5, 2012. The DIB claim was denied upon reconsideration. (*Id.* at 132–34.)

Administrative Law Judge Sabrina M. Tilley (the "ALJ") held a hearing on July 30, 2014. On October 29, 2014, the ALJ issued an unfavorable decision. (Tr. 11–21.) The ALJ found at step one of the "sequential evaluation" process that Claimant "has not engaged in substantial gainful activity since August 11, 2011, the amended alleged onset date." (*Id.* at 13.) At step two,

---

[2] Claimant orally amended her alleged onset date at the administrative hearing to August 11, 2011, her fiftieth birthday. (Tr. 34–36.)

2

the ALJ found that Claimant had several severe impairments, specifically: degenerative disc disease, calcaneal spurs, diabetes mellitus, peripheral neuropathy, and coronary artery disease. (*Id.*) At step three of the analysis, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 14.) The ALJ next found that Claimant had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 CFR § 416.967(b), reduced by certain exertional limitations. (*Id.* at 15–19.) Finally, the ALJ found at step four that while Claimant was incapable of performing past relevant work, there were a significant number of jobs existing in the national economy that Claimant could perform. (*Id.* at 20.)

The Appeals Council denied review of the ALJ's decision on January 2, 2016. (Tr. 1–6.) On March 17, 2016, Claimant filed the Complaint in this Court.

## II. STANDARD OF REVIEW

### A. *Review of the PF&R*

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B.     Review of the ALJ's Findings and Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence.  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision.  *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

A claimant bears the burden of proving to the Commissioner that she is disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).  "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d 260, 264–65 (4th Cir. 1981); *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III. DISCUSSION

Plaintiff raises three objections to the PF&R. First, he contends that the magistrate judge erred in finding that the Fourth Circuit's holding in *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir. 2012), did not require the ALJ to consider medical evidence submitted after Claimant's date last insured ("DLI"). Second, he accuses the ALJ of failing to apply the "special technique" in evaluating Claimant's mental impairments. Third, he faults the magistrate judge for endorsing the ALJ's reliance on the "equivocal" testimony of the vocational expert.

### A. *Retrospective Consideration of Post-DLI Medical Evidence*

To qualify for DIB, a claimant must prove that she became disabled on or before the date that her insured status expired. 20 C.F.R. §§ 404.101(a), 404.131(a); *see Johnson v. Barnhart*, 434 F.3d 650, 655–66 (4th Cir. 2005). "Medical evaluations made after a claimant's insured status has expired," however, "are not automatically barred from consideration." *Bird*, 699 F.3d at 340. Rather, post-DLI medical evaluations "may be relevant to prove a disability arising *before* the claimant's DLI." *Id.* (emphasis added).

In *Bird*, the Fourth Circuit discussed the circumstances in which the Commissioner is required to give retrospective consideration to post-DLI evidence. In that case, the claimant filed for DIB benefits alleging disabling post-traumatic stress disorder ("PTSD"). He did not have any medical records predating the DLI, yet two pertinent records produced after the DLI suggested that the claimant suffered from severely disabling PTSD that had been ongoing since his days spent in combat during the Vietnam War. *Id.* at 339. The administrative law judge declined to consider the post-DLI records on the basis that they failed to reflect the claimant's pre-DLI condition.

The Fourth Circuit remanded, reasoning that post-DLI records "could be reflective of a possible earlier and progressive degeneration." *Id.* at 341 (internal quotation marks omitted). The court recognized that "evidence created after a claimant's DLI, which permits an inference of linkage between the claimant's post-DLI state of health and her pre-DLI condition, could be the 'most cogent proof' of a claimant's pre-DLI disability." *Id.* (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). Retrospective consideration of the post-DLI evidence was necessary

6

when the record cannot be said to "rule out any linkage" between the claimant's final condition and her earlier symptoms.  *Id.* (citation omitted).

Importantly, the Fourth Circuit emphasized that post-DLI evidence is not always relevant to determining the existence of a disabling condition prior to the DLI.  The Fourth Circuit's opinion in *Johnson* provides an example. 434 F.3d at 650. Distinguishing that case, the *Bird* court explained:

> In *Johnson*, after the SSA administrative hearing had concluded, the claimant's treating physician submitted a new assessment identifying additional impairments that were not linked in any manner to the claimant's condition before her DLI. Because there was no evidence that these impairments existed before the claimant's DLI, we held that the evidence was not relevant, and that the ALJ was not required to give the new assessment retrospective consideration.

699 F.3d at 341 (citing *Johnson*, 434 F.3d 656) (internal citations omitted).  The question presented by way of Plaintiff's Objections is whether Claimant's post-DLI evidence gave rise to an "inference of linkage" between her post-DLI state of health and her pre-DLI condition.  *Id.*  If so, the ALJ was required to consider the evidence in her decision.

Taking up this objection, the Court turns to the post-DLI evidence of Claimant's mental impairment.  The medical record most strongly suggesting the existence of a mental impairment is that of Claimant's psychological consultative examination conducted on March 3, 2013, nine months after her DLI.  The examiner found moderate deficiencies in Claimant's immediate memory, severe deficiencies in delayed memory, and marked deficiencies in attention/ concentration and diagnosed an anxiety disorder and a cognitive disorder. (Tr. 487.)  Later that same month and upon review of the consultative examination, a State agency psychologist opined that Claimant "does not retain the mental/emotional capacity to complete work-related activity in a manner consistent with [substantial gainful activity]."  (*Id.* at 99.)  The agency psychologist

7

placed the onset date of Claimant's mental impairment on December 5, 2012, three months prior to the consultative examination, because Plaintiff had told the examiner that his wife's "[c]ognitive difficulties were not as severe 6 months ago" but "began to be a problem [then] and . . . continue[d] to . . . increase[] over the past 6 months." (*Id.*)  Finally, Plaintiff points to a comprehensive psychiatric evaluation of July 10, 2013 where Claimant reported "a history of panic episodes with development of severe agoraphobia during the past year." (*Id.* at 646.)  Plaintiff suggests that this evaluation places the onset date for Claimant's panic attacks just after her DLI.

Though this evidence supports the onset of a disabling mental condition some months after Claimant's DLI, there are no medical records evidencing a mental impairment prior to that date. As the magistrate judge noted, Claimant's June 6, 2011 Cabin Creek Health Center record indicated normal mental health status; an examination of October 9, 2012 revealed no objective findings to support Claimant's complaints of memory loss; and a December 29, 2012 EEG was returned normal.  The Court thus finds this case more akin to *Johnson* than *Bird*.  Unlike in *Bird*, where the evidence of record suggested that the claimant's PTSD symptoms had been ongoing and therefore related back to the relevant period, Claimant put forward no evidence that she suffered from a mental impairment prior to her DLI.  The ALJ was left without means to link the post-insured status evidence to the insured status period.[3]

For these reasons, the Court **FINDS** *Bird* inapplicable.  The ALJ did not err in failing to consider whether Claimant's post-DLI evidence of mental impairments related back to the period of insured status.

---

[3] It is worth noting that the ALJ remarked at the administrative hearing, "I don't see much in the way of mental impairments in the record prior [to December of 2012]." Claimant's counsel responded, "I think that's correct." (Tr. 31.)

8

### B. *Application of Special Technique*

Like the first, Plaintiff's second objection takes issue with the ALJ's consideration of Claimant's mental health impairments. This objection concerns application of the "special technique."

Mental impairments require a distinct analysis under Social Security regulations. 20 C.F.R. § 404.1520a. The ALJ uses a "special technique" when evaluating the severity of a mental impairment. *Id.* The technique is employed at steps two and three of the sequential evaluation. *See Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 652–53 (6th Cir. 2009). Using this technique, the ALJ first evaluates the "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant] ha[s] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). Next, upon a finding that the claimant has a medically determinable mental impairment, the ALJ must rate the degree of functional limitation resulting from that impairment. *Id.* at § 404.1520a(b)(2). The rating process requires an evaluation of the claimant's performance in "four functional areas essential to the ability to work: activities of daily living; ability to maintain social functioning; concentration, persistence, and pace in performing activities; and deterioration or decompensation in work or work-like settings." *Felton-Miller v. Astrue*, 459 F. App'x. 226, 231 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1520a and 416.920a). Only after evaluating the degree of functional limitation may the ALJ determine whether the mental impairment is a severe impairment. *Id.* at § 404.1520a(d). Further, as mental impairments are considered "non-exertional limitations," 20 C.F.R. § 404.1569a, they must be considered in the ALJ's determination of the claimant's RFC even if they do not independently constitute a severe impairment under step two.

In this case, Plaintiff claims that the ALJ failed to use the special technique to evaluate Claimant's mental impairments. He argues that remand is the only appropriate remedy. At the time Plaintiff filed the Objections, the Fourth Circuit had not yet addressed whether a failure to employ the special technique requires remand or whether harmless error analysis is applicable. *See Wright v. Colvin*, 2:16-cv-02053, 2016 WL 7650795, at *9–10 (S.D. W. Va. Dec. 14, 2016), *report and recommendation adopted by* 2017 WL 64911 (S.D. W. Va. Jan. 5, 2017) (discussing circuit split among the federal appellate courts to have ruled on the issue). When presented with the question earlier this year, the Fourth Circuit was unwilling to find that failure to follow the special technique requires remand in every case. *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). There, the ALJ failed to articulate his findings concerning the claimant's mental health impairments in accordance with the special-technique regulation. The Fourth Circuit reviewed the decision for harmless error. Noting that "failure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review," *id.* at 662, the court held that "the ALJ's lack of explanation requires remand." *Id.* at 663 (citations and internal quotation marks omitted).

The ruling in *Patterson* would seem favorable to Plaintiff at first blush. Yet upon review of the ALJ's decision, the Court cannot find that the ALJ failed to apply the special technique as Plaintiff claims. At step two of the sequential analysis, the ALJ found "no evidence of a severe mental impairment supported by the record prior to December 5, 2012." (Tr. 14.) She then proceeded to review specific medical records evincing normal mental health status, all of which the Court discussed above: June 6, 2011 records from Cabin Creek Health Center revealing a

10

mental status within normal limits; October 9, 2012 neurology records showing normal memory, attention span, and concentration upon examination; and a record of a normal EEG performed December 20, 2012. The ALJ concluded by making specific findings in the four functional categories:

> [T]he undersigned finds that with regard to the "B" criteria for the period August 11, 2011, the amended alleged onset date, to December 5, 2012, the claimant had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation.

(*Id.* 15.) The ALJ's findings on each of the four categories distinguish this case from *Patterson*. 846 F.3d at 662 (noting the ALJ "did not rate Patterson's four areas of functional limitation listed in § 404.1520a(c)(3) according to the prescribed scale"). The ALJ went on to explain her reasoning as follows:

> On March 29, 2013, Karl G. Hursey, Ph.D., a State agency psychological consultant, completed a Psychiatric Review Technique form and opined the claimant had severe mental impairments of an organic mental disorder and an anxiety disorder resulting in moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation. The evidence did not establish the presence of the "C" criteria. Dr. Horsey completed a Mental Residual Functional Capacity Assessment form and opined that the claimant did not retain the mental/emotional capacity to complete work-related activity in a manner consistent with SGA as of December 5, 2012, which was three months prior to the consultative evaluation showing cognitive difficulties. The undersigned gives great weight to this opinion but notes it is after the period at issue and the evidence of record dated prior to this does not support evidence of a severe mental impairment.

(Tr. 19.)

Contrary to Plaintiff's assertion, the ALJ did apply the special technique. The ALJ conducted an analysis, applying the special technique to evaluate Claimant's functional limitations arising from her mental impairments, and evaluated Claimant's treatment records and the

11

consultative findings. Inasmuch as Plaintiff argues that the ALJ's analysis was deficient, the Court finds that the ALJ appropriately analyzed the meager mental health evidence of record. While the ALJ found that Dr. Hursey's opinion supported severe mental impairments as of December 5, 2012, she concluded that Claimant had put forward no evidence supporting the onset of an impairment prior to that date. This is yet another salient factor distinguishing this case from *Patterson*. In that case, the Fourth Circuit found that the ALJ's error was exacerbated by a failure to weigh conflicting evidence bearing on the claimant's mental impairments. 846 F.3d at 660. There is no such evidence of conflict here. Rather, the utter lack of evidence led the ALJ to conclude that Claimant had not proven a disabling mental impairment prior to December 2012.

In conclusion, the ALJ appropriately applied the special technique. The ALJ's evaluation of Claimant's mental impairments and the manner in which she considered the impairments in formulating RFC is supported by substantial evidence.

### C. *Testimony of the Vocational Expert*

As his final objection, Plaintiff challenges the ALJ's reliance on the vocational expert's testimony. Plaintiff claims that the expert's testimony was unreliable because her opinions were ambiguous. Principally, Plaintiff objects to the vocational expert testifying that her opinion of the number of available jobs was "pretty much" consistent with the Dictionary of Occupational Titles ("DOT"). The magistrate judge found that the ALJ's reliance on the vocational expert's testimony was based upon substantial evidence.

Social Security Ruling 00-4p requires an ALJ to "inquire, on the record" whether a vocational expert's testimony conflicts with the DOT. 2000 WL 1898704, at *2; *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015). Where there is an apparent conflict between the

12

expert's testimony and the DOT, the Ruling directs the ALJ to "[i]dentify and obtain a reasonable explanation" for the conflict and "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4P, at *1. "[T]he context of the word 'apparent' in SSR 00-4p makes plain that . . . the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Pearson*, 810 F.3d at 209.

The magistrate judge reviewed the pertinent colloquy between ALJ and vocational expert at the administrative hearing. To summarize, the vocational expert testified that mailroom clerk positions would be available to a person with limitations like Claimant's. Due to Claimant's limited capacity to stand and walk, the expert reduced the projected number of available clerk positions nationally (102,000) by 75 percent. The ALJ asked, "And so you would guestimate say around close to 25,000 nationally for instance?" (Tr. 53.) "Roughly," the vocational expert responded, while admitting, "[t]here isn't really any reliable way that I'm aware of to weed these out." (*Id.*) The ALJ then asked a question that Plaintiff finds particularly objectionable: "And you're consistent with the DOT pretty much?" (*Id.*) The vocational expert answered, "Yes ma'am." (*Id.*)

Plaintiff argues that the vocational expert's testimony must be completely consistent with the DOT, not nearly consistent or "pretty much" consistent. But Plaintiff has not demonstrated any manner in which the occupational evidence provided by the vocational expert in this case conflicted with the DOT. To illustrate, *Pearson* involved an apparent conflict relating to the degree of reaching required in the three jobs provided by the vocational expert. "For all three, the [DOT] list[ed] frequent reaching as a requirement." 810 F.3d at 210. The ALJ's RFC assessment, on the other hand, restricted the claimant's ability to reach overhead with one arm.

13

*Id.* The Fourth Circuit reasoned that the ALJ erred in failing to identify and resolve the conflict between the expert's testimony that the claimant was suited to perform the jobs and the requirements of those jobs as set forth in the DOT. *Id.* at 210–11. *Pearson*'s definition of an "apparent conflict" does not extend to the somewhat guarded testimony of the vocational expert in this case. In the Fourth Circuit's view, SSR 004-p simply requires the ALJ to "compare the express language of the [DOT] and the vocational expert's testimony." The court expressly sought to avoid a standard that "would allow the claimant to nitpick an ALJ's or expert's word choice on appeal." *Id.* at 209.

Plaintiff also argues that while the vocational expert's testimony may not have been in apparent conflict with the DOT, it was too vague to support the ALJ's finding that sufficient jobs existed in the national economy that Claimant could perform. Plaintiff cites four favorable out-of-circuit cases on this point, though none is factually similar. In each case, the vocational expert's equivocal testimony wholly undermined the ALJ's conclusion that the claimant retained the ability to work despite his or her limitations. *Talbert v. Comm'r of Soc. Sec.*, No. 1:15-cv-468, 2016 WL 3387308, at *10 (S.D. Ohio June 15, 2016), *report and recommendation* a*dopted*, 2016 WL 3855447 (July 15, 2016) (vocational expert's testimony could not support ALJ's step-five finding when the expert acknowledged that the job of usher, which the claimant allegedly could perform, was one of five different job titles within a particular DOT provision but did not clarify how many of the 700 regional jobs she cited were usher jobs); *Watkins v. Comm'r of Soc. Sec.*, No. 1:14-cv-514, 2015 WL 1476743, at *7 (S.D. Ohio Mar. 31, 2015) (finding the vocational expert's noncommittal testimony that the claimant would experience "more than very little" vocational adjustment by transferring jobs was insufficient to establish that the claimant had

14

acquired skills that were transferable with very little vocational adjustment); *Brown v. Colvin*, No. 3:13-cv-01832-HZ, 2014 WL 6388540, at *9 (D. Or. Nov. 13, 2014) (finding vocational expert's testimony insufficient to support a finding of no disability where the expert could not confirm whether a significant number of representative occupations existed in the national or local economy); *Williams v. Astrue*, No. 3:10-cv-00235-J-JBT, 2011 WL 721501, at *4 (M.D. Fla. Feb. 22, 2011) (step-five decision to deny benefits not supported by substantial evidence where vocational expert admitted it was "debatable" whether the relevant jobs could be performed with the use of a 15 inch footstool required by the claimant).

Here, the vocational expert's testimony that "roughly" 25,000 postal positions existed in the national economy did not leave the ALJ's step-five conclusions without support. Even accounting for some reduction in the expert's estimate, the ALJ appropriately concluded that available jobs existed in significant numbers. *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (stating in dicta that 110 jobs in a particular region may constitute a significant number); *see also Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) ("[T]he testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers."); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding that vocational expert testimony that there were 10,000 jobs nationally sufficiently showed a significant number). Identification of an occupation appropriate for Claimant, existing in significant numbers, fulfills the Commissioner's burden at the fifth step of the process.

The Court **FINDS** the ALJ reached a decision at step five that was supported by substantial evidence.

## IV. CONCLUSION

For these reasons, the Court **OVERRULES** the Objections, (ECF No. 26), **ADOPTS** the PF&R, (ECF No. 25), **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 20), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 23), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 20, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE